IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KARVIS LAMAR DENNIS, #292373, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CIVIL NO. 2:16-cv-438-WHA |
| | ) |
| JOSEPH HEADLEY, et al., | ) |
| | ) |
| Respondents. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Petitioner Karvis Lamar Dennis ("Dennis"), an inmate of the Alabama Department of Corrections, petitions the court for habeas corpus relief pursuant to 28 U.S.C. § 2254. He challenges his conviction for murder in the Circuit Court for Montgomery County, Alabama. Doc. 1. For the following reasons, the court recommends that the petition be denied and the case dismissed.

**I. STATE COURT PROCEEDINGS**

Dennis admitted he shot and killed the victim. He argued he acted in self-defense. *State v. Dennis*, CR–13–0591 (Ct. Crim. App. Aug. 22, 2014), Doc. 8-6 at 11. The jury found Dennis guilty of murder. The circuit court sentenced him to twenty-two years in prison. *Id.* at 1.

**A. Direct Appeal**

Dennis appealed, raising two issues. First, he argued the circuit court erred in denying his motion for mistrial after an emotional outburst during testimony by the victim's mother. *Id.* at 2. He argued the outburst denied him a fair trial before an impartial jury. *Id.* Second, he argued the circuit court erred in denying his motion for new trial because a juror failed to disclose during voir dire her familiarity with the area of the shooting and her alleged medical condition. *Id.* at 6. The

Alabama Court of Criminal Appeals rejected both grounds and affirmed the judgment. *Id.* at 11. It denied Dennis's application for rehearing. Docs. 8-7, 8-8. The Alabama Supreme Court denied Dennis's petition for writ of certiorari, and a certificate of judgment issued on October 10, 2014. Doc. 8-9.

### B. Rule 32 Proceedings

Dennis sought postconviction relief under Alabama Rule of Criminal Procedure 32. Doc. 8-10 at 4. The circuit court summarily dismissed Dennis's claims because two of them were the same ones he raised on direct appeal, and the third alleging ineffective assistance of counsel was "not pleaded with the requisite specificity." Doc. 8-11 at 9.

Dennis appealed, raising two issues. First, he reasserted his claim regarding the emotional outburst at trial. Doc. 8-14 at 2. Second, he argued he was denied due process because he was not served with a copy of the State's response to his petition. *Id.* at 3. The Court of Criminal Appeals affirmed. It held his claim regarding the emotional outburst was barred under Alabama procedural law because it already was raised and addressed on appeal. *Id.* It further held Dennis was, in fact, served properly, and the circuit court followed proper procedure in dismissing the petition. *Id.* It deemed abandoned the claims Dennis did not reassert. *Id.* at 2. It denied his application for rehearing. Doc. 8-16. A certificate of judgment issued on December 31, 2015. Doc. 8-17.

### II. HABEAS PETITION AND THE PARTIES' ARGUMENTS

Dennis raises three claims for § 2254 relief. First, he argues his Sixth and Fourteenth Amendment rights to a fair trial before an impartial jury were violated when the circuit court refused to grant a mistrial after the emotional outburst in the gallery. Doc. 1 at 16–18. Second, Dennis argues his Sixth and Fourteenth Amendment rights were violated when the circuit court refused to grant a new trial after learning a juror failed to disclose during voir dire that she was

familiar with the area and people where the crime occurred, and that she was biased based on a connection she felt with the deceased. *Id.* at 19–20. Finally, Dennis argues his equal protection rights were violated because the court records do not include a transcript of the outburst. *Id.* at 21–22.

Respondents answered, arguing the court should deny relief on Dennis's claims regarding (1) the emotional outburst and (2) the juror's answers during voir dire because the state court rulings were not contrary to or an unreasonable application of United States Supreme Court precedent. Doc. 8 at 5, 10. Respondents further argue this court cannot review Dennis's third claim regarding the transcript of the outburst because he did not raise it in state court, and it is procedurally defaulted under state law. *Id.* at 10–11.

This court entered an order giving Dennis an opportunity to respond to the answer, and advising Dennis of the constraints that 28 U.S.C. § 2254(d) places on federal courts to grant relief, including procedural default of federal claims, as well as the ways to overcome default. Doc. 9.

Dennis responded. Doc. 10. He asserts the trial court's personal observations used to resolve the outburst were "contrary to the facts of what actually occurred." *Id.* at 3. Dennis maintains the court's failure to provide any curative charge, the lack of a record for a reviewing court, and the admission of a juror's influence from the outburst demonstrate that he did not receive a fair and impartial trial. *Id.* Dennis argues the state court adjudication of his "claims was based on an unreasonable determination of the facts in light of the evidence presented in the state courts proceeding. Clearly prejudice is obvious that failure to consider the claims would result in a fundamental miscarriage of justice." *Id.* at 4. Dennis asserts he "is innocent of intentionally/intentional murder, given the facts of the case." *Id.* He asserts he challenged the lack

3

of record in Doc. 8-8 at 3, but the state court did not address it.[1] *Id.* at 7. He argues "[f]ailure to consider the claims will result in a fundamental miscarriage of justice in [his] case"; the failure to record the incident undermines the appellate process; and Respondents waived his equal protection claim by not addressing it. *Id.* at 8–9. Throughout his response, Dennis reiterates his arguments on the merits of his claims regarding the outburst in the gallery and the juror's disqualification.

The court has reviewed the § 2254 petition, the state court record, the parties' arguments, and applicable federal law. The court concludes that no evidentiary hearing is required, and the petition is due to be denied in accordance with the provisions of Rule 8(a), Rules Governing Section 2254 Cases in United States District Courts.

### III. DISCUSSION

#### A. Claim Regarding the Incomplete Record Cannot Be Reviewed

Dennis claims his constitutional rights were violated by the trial court's failure to ensure the record included a transcript of the outburst in the gallery. The court determines that Dennis did not adequately exhaust his state remedies on the claim. The claim is now defaulted under an adequate and independent state ground, and he demonstrates no excuse allowing the court to consider it. Consequently, this court cannot review the claim.

The procedural default doctrine is closely related to the exhaustion requirement in § 2254 cases. To preserve a federal claim for habeas review, principles of exhaustion require a petitioner to present the federal claim and facts supporting it to the state's highest court, either on direct appeal or on collateral appeal through postconviction proceedings. *See Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (holding exhaustion principles apply to state postconviction proceedings as well as direct appeal). A petitioner "must give the state courts one full opportunity

---

[1] Doc. 8-8 is Dennis's petition for writ of certiorari before the Alabama Supreme Court on direct appeal.

to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Pruitt*, 348 F.3d at 1359. In Alabama, this requires filing an appeal to the Court of Criminal Appeals, an application for rehearing, and a petition for discretionary review with the Alabama Supreme Court. *See Pruitt*, 348 F.3d at 1359 (describing Alabama procedures for discretionary review); *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001) ("Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule."). Doing so gives the state courts the first opportunity to apply controlling law to their case and petitioner's claim. *See Duncan v. Walker*, 533 U.S. 167, 179 (2001) ("The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'" (further quotation marks and citations omitted)).

Federal habeas review is also unavailable if the state court decision was made on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). If a petitioner did not present a claim to the highest state court but would now be unable to present the claim in state court because of a state procedural rule, such a petitioner "meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Id*. at 732. But the petitioner has "procedurally defaulted" the federal claim under an adequate and independent state rule. *See id.* at 750. Federal claims which have never been presented to a state court or claims which were not exhausted properly in the state courts are procedurally defaulted if presentation of the claims in state court would be barred by firmly established and regularly followed state procedural rules. *Gray v.*

*Netherland*, 518 U.S. 152, 161–62 (1996) (where state court remedies are no longer available because petitioner failed to present claim on direct appeal or in state postconviction action, petitioner has procedurally defaulted claims and is generally barred from asserting claims in a federal habeas proceeding); *Coleman*, 501 U.S. at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] . . . there is a procedural default for purposes of federal habeas.") (citations omitted).

Dennis asserts he raised the argument in his petition for writ of certiorari before the Alabama Supreme Court. Doc. 10 at 7. Dennis did not raise the issue until he filed his petition for writ of certiorari. Docs. 8-4, 8-7, 8-8. When the Alabama Supreme Court denied the petition, its ruling was not a decision on the merits. *See Waldrop v. Commissioner, Ala. Dep't Corr.*, 711 F. App'x 900, 918 (11th Cir. 2017) (citing *Ex parte McDaniel*, 418 So.2d 934, 935 (Ala. 1982)). Presenting a claim for the first and only time to the Alabama Supreme Court on discretionary review, where review on the merits is granted "only when there are special and important reasons," does not satisfy the exhaustion requirement to fairly present a claim to the state court, especially where the state court exercises its discretion to decline to review the mertis of the claim. *Id.* (relying on *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (holding petitioner did not fairly present claims "where the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor'") (citing state procedural rule)); *see also* Ala. R. App. P. 39(a) (Alabama Supreme Court's discretionary review is granted). State procedural rules preclude Dennis from returning to state court to raise his claim in Rule 32 proceedings. Alabama Rule of Criminal Procedure 32.2(a) precludes Dennis from raising most claims that were or could have been raised

6

in previous proceedings. Rule 32.2(b) precludes successive petitions. And Rule 32.2(c) sets a one-year deadline for most Rule 32 claims. *See* Ala. R. Crim. P. 32.2(a), (b), (c). These independent and adequate state procedural grounds are firmly established and regularly followed by Alabama appellate courts. *E.g., Tucker v. State*, 956 So.2d 1170, 1171-73 (Ala. Crim. App. 2006) (Rules 32.2(a)(3), 32.2(a)(5), and 32.2(c)); *Horsley v. State*, 675 So.2d 908, 909 (Ala. Crim. App. 1996) (Rules 32.2(a)(3), 32.2(a)(5), 32.2(b), and 32.2(c)); *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006) (Rule 32.2(c)); *see Boyd v. Comm'r, Alabama Dep't of Corr.*, 697 F.3d 1320, 1335 (11th Cir. 2012) (holding claims barred under Ala. R. Crim. P. 32.2(a)(3) and 32.2(a)(5), requiring claims to be raised at trial and on direct appeal, are procedurally defaulted from federal habeas review). Consequently, Dennis's claim regarding the record in state court is procedurally defaulted for purposes of federal habeas review.

> This court may reach the merits of procedurally defaulted claims in two instances:
>
> First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *[Wainwright v.]* Sykes, 433 U.S. [72], 87 [(1977)]. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Id.*; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002). Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495–96. A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *Id.*

*Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003); *see also Coleman*, 501 U.S. at 750. The miscarriage of justice standard is directly linked to innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Innocence is not an independent claim; instead, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id.* at

315. This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496; *Schlup*, 513 U.S. at 321. "[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell,* 547 U.S. 518, 538 (2006) (citations omitted). Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims." *Id.* at 537. "To establish actual innocence, [a habeas petitioner] must demonstrate that . . . 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. United States,* 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327–28); *House,* 547 U.S. at 538. In this context, a petitioner must show constitutional error coupled with newly discovered, reliable evidence that was not presented at trial that would establish factual innocence rather than mere legal insufficiency. *Bousley*, 523 U.S. at 623-24*; Johnson v. Alabama,* 256 F.3d 1156, 1171 (11th Cir. 2001); *see also Schlup,* 513 U.S. at 324. The Court in *Schlup* observed that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare." *Schlup*, 513 U.S. at 324.

Dennis makes only conclusory statements that he is innocent and that failure to consider his procedurally defaulted claim would result in a miscarriage of justice. His argument is insufficient to meet the difficult standard under *Schlup.* Therefore, Dennis's claim regarding the record cannot be reviewed. *See Henderson*, 353 F.3d at 892; *see also Coleman*, 501 U.S. at 750. The court now addresses Dennis's claims that have been preserved for federal review.

### B. Standard of Review on the Merits

Dennis preserved for review his federal claims regarding the outburst in the gallery and the juror's bias. For claims properly before a federal court, a writ of habeas corpus shall be granted only if the prior adjudication of the claim:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The Supreme Court has held that a state court decision is "contrary to" federal law under § 2254(d)(1) "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell*, 535 U.S. at 694. Under the "unreasonable application" standard, this Court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way. *See Williams v. Taylor*, 529 U.S. 362, 411–13 (2000) (O'Connor, J., delivering the opinion of the Court with respect to Part II). The applicable law "refers to the holdings, as opposed to the dicta, of [Supreme Court] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. The applicable court is the United States Supreme Court, not lower courts. *Renico v. Lett*, 559 U.S. 766, 779 (2010). "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories

are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The standard is deferential: "[t]he state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citation omitted). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

As for the unreasonable determination of facts prong under § 2254(d)(2), the federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (citation omitted). "If [r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Id*. (quotation marks and citations omitted). Factual issues made by a state court are presumed correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Supreme Court has recognized there is a question about the relationship between § 2254(d)(2)'s "unreasonable determination of the facts" standard and § 2254(e)(1)'s presumption, but it has "not yet defined the precise relationship between [them.]" *Brumfield*, 135 S. Ct. at 2282 (quotation marks and citation omitted). If a petitioner failed to develop the factual basis of a claim in state court, the federal court cannot hold an evidentiary hearing unless the petitioner shows "the claim relies on . . . a new rule of constitutional law, made retroactive . . .; or . . . a factual predicate that could not have been previously discovered through the exercise of due diligence; and [ ] the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the

10

underlying offense." 28 U.S.C. § 2254(e)(2). "Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief." *Cullen*, 563 U.S. at 185.

Except for certain kinds of error that require automatic reversal, even when a state petitioner's federal rights are violated "relief is appropriate only if the prosecution cannot demonstrate harmlessness." *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015); *see also Glebe v. Frost*, 135 S. Ct. 429, 430–31 (2014) ("Only the rare type of error—in general, one that infect[s] the entire trial process and necessarily render[s] [it] fundamentally unfair—requires automatic reversal.") (quotation marks omitted, alterations in original). "Harmlessness" in the context of § 2254 means "the federal court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *Davis*, 135 S. Ct. at 2197–98 (quotation marks omitted). These strict limitations reflect that habeas relief is granted sparingly, reserved for "extreme malfunctions in the state criminal justice systems" and "not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quotation marks omitted).

### C. Emotional Outburst

Dennis argues the state court should have granted his motion for mistrial after an emotional outburst by someone in the gallery at trial deprived him of a fair trial by an impartial jury, as guaranteed by the Sixth and Fourteenth Amendments. Dennis argues the state court erroneously reasoned that the jury instruction regarding testimony from witnesses was sufficient as a "curative instruction" for the outburst from a spectator. Doc. 10 at 2.

During the prosecution's direct examination of the victim's mother, the mother authenticated Exhibit 3, a recording of the victim's 911 call. Doc. 8-6 at 2; Doc. 8-2 at 73–76. The following then occurred:

> (State's Exhibit 3 was admitted into evidence and played in open court during which an outburst came from the courtroom gallery and the following occurred:)

> THE COURT: Stop. Hold it. Y'all need to leave the courtroom now. Everybody, let's go, out of the courtroom now.
>
> (The following was held at the bench sotto voce:)
>
> [Defense Counsel]: We move for a mistrial. Obviously, the outburst was enough where the Court had to order people out of the courtroom. I've been doing this a long time. I've done a number of cases before you. It was such an outburst—
>
> THE COURT:--overrule.
> Mr. [Prosecutor 1], your witnesses or whoever, family, is not to be allowed back in this courtroom. Do you understand me?
>
> [Prosecutor 1]: Judge, while [Prosecutor 2] plays that, can I explain that to them—
>
> [Defense Counsel]: --Your Honor, I doubt the court reporter got it all. But just for the record, it was an emotional outburst—
>
> THE COURT:--very emotional outburst.
>
> [Prosecutor 2]: May I play it now, Judge?
>
> THE COURT: Yes.
>
> (State's Exhibit 3 was played in open court.)

Doc. 8-2 at 75–77 (sealed); Doc. 8-6 at 2–3.

On appeal, Dennis argued the circuit court failed to protect his right to a fair trial under the Sixth Amendment by denying the motion for mistrial without even giving the jury a cautionary instruction. Doc. 8-4 at 10; Doc. 8-6 at 4. The Court of Criminal Appeals cited Alabama authority requiring a defendant to show prejudice, and that "manifestations of grief by spectators related to the victim of a crime, as a general matter, will not alone furnish good ground for a new trial[.]" Doc. 8-6 at 4 (citing *McNair v. State*, 653 So.2d 320, 329–30 (Ala. Crim. App. 1992) (further quotation marks and citations omitted). It held that Dennis did not request a cautionary instruction, and while his failure to do so did not waive the issue, it did weigh against a claim of prejudice. *Id.*

(citing *Allen v. State*, 659 So.2d 135, 145 (Ala. Crim. App. 1994)). Doc. 8-6 at 5–6. Further, it held, the circuit court removed the disruptive spectators, and it later instructed the jury, "In arriving at your verdict, do not allow sympathy prejudice or emotion to influence you. Your verdict must strictly be based upon the evidence in this case and the law that applies to the case." *Id*. at 6. Consequently, it held, the circuit court's failure to instruct the jury was not reversible error. *Id.* (citation omitted). Additionally, it noted, "the circuit judge witnessed the outburst and determined it did not affect Dennis's rights so much so as to warrant a mistrial." *Id.* (citing *McNair*).

Dennis argues the state court findings of fact regarding the outburst are not supported by the record or should not be presumed correct. Doc 10 at 3–4. Dennis argues the outburst prejudiced the jury, as demonstrated by the statement of one of the jurors, E.B., during postconviction proceedings, regarding the effect it had on her. The juror was asked if she felt connected to the deceased or Dennis. Doc. 8-3 at 114. She answered, "Yes . . . [e]specially when there was an outcry in the audience that kind of swayed me in a way that probably would have been natural." The juror, however, also testified she and the other jurors gave serious and full consideration of the evidence during deliberations. Doc. 8-3 at 118–19. Dennis does not describe what, exactly, happened in the gallery. Dennis fails to rebut the presumption of correctness of the findings of fact in state court by clear and convincing evidence, as required by 28 U.S.C. § 2254(e)(2). *Cf. Davis v. Ayala*, 135 S. Ct. 2187, 2201 (2015) (addressing trial court's approval of prosecutor's reasons for peremptory challenge and holding "determinations of credibility and demeanor lie peculiarly within a trial judge's province, and in the absence of exceptional circumstances, we [will] defer to the trial court") (quotation marks and citation omitted). Dennis fails to show the state court's findings of fact were unreasonable in light of the evidence presented in the state court proceeding. Consequently, Dennis is not entitled to relief under § 2254(d)(2) on this claim.

Generally, the Sixth Amendment guarantees a defendant a fair trial by an impartial jury. *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988). In *Carey v. Musladin*, 549 U.S. 70 (2006), the Supreme Court considered whether a petitioner was entitled to § 2254 relief when spectators wore buttons with the victim's face on them. The petitioner argued "certain courtroom practices are so inherently prejudicial that they deprive the defendant of a fair trial." *Id.* at 72. The Supreme Court denied § 2254 relief. It held "[t]his Court has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial." *Id.* at 76. The Court recognized it provided guidance on whether state-sponsored conduct prejudiced a defendant's right to a fair trial, but it had not addressed the conduct of private spectators. *Id.* "Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.' § 2254(d)(1)." *Id.* at 77.

Respondents state they have not found United States Supreme Court authority addressing a situation like Dennis's, involving one incident of private spectator outburst. Doc. 8 at 9. Neither has this court. *See also Smith v. Dunn*, No. 2:13-CV-00557-RDP, 2017 WL 1150618, at *67 (N.D. Ala. Mar. 28, 2017) (concluding the court could not review claim regarding private spectators' conduct "because no Supreme Court precedent has established that private spectator conduct has denied a defendant's fair-trial rights") (citing *Musladin*, 549 U.S. at 77, and discussing other cases), *appeal filed*, *Smith v. Commissioner*, No. 17-15043 (11th Cir. Nov. 9, 2017); *and see Theisen v. Davis*, No. SA-17-CA-991-FB, 2018 WL 1902690, at *6 (W.D. Tex. Apr. 19, 2018) (same), *appeal filed*, *Theisen v. Davis*, No. 18-50423 (5th Cir. May 22, 2018). Based on *Musladin*, the state court decision in Dennis's case was not contrary to, or an unreasonable application of, clearly established law established Federal law as determined by the Supreme Court of the United

States. *See* 28 U.S.C. § 2254(d)(1). Consequently, no relief is warranted on Dennis's claim regarding private spectator conduct.

### D. Alleged Juror Misrepresentation

Dennis argues one of the jurors, E.B., withheld vital information regarding her familiarity with the area surrounding the crime scene and the people in that neighborhood. Doc. 1 at 19. He argues his counsel could have struck the juror using a peremptory challenge. *Id.* Dennis argues the juror's nondisclosure of her familiarity with the neighborhood, along with her later testimony that she felt a connection with the deceased and was influenced by the outburst in the gallery, demonstrates the juror was biased in favor of the prosecution. *Id.* Dennis argues the juror bias denied him an impartial verdict and fair trial. *Id.*[2]

During the evidentiary hearing on Dennis's motion for new trial, the juror testified that when she was asked before trial if she was familiar with the area of town where the death occurred, she misheard the area of town as "Gladline" not "Gladlane," and specifically, she was familiar with the area known as Burklawn. Doc. 8-3 at 113, 118; Doc. 8-6 at 6. It was during trial that the juror realized she knew the area and friends who lived there. Doc. 8-3 at 113–14; Doc. 8-6 at 6. When asked how her familiarity affected her, she answered, "[j]ust vivid—I just felt connected to it in a way." Doc. 8-3 at 114. When asked if it caused her to have feelings with respect to the deceased or Dennis, the juror said, "Yes. . . . Especially when there was an outcry in the audience that kind of swayed me in a way that probably would have been natural." *Id.* She testified her familiarity with the area affected her in that she "just could vividly see where it was happening. . . . ." *Id.* The juror testified she felt a connection with the deceased because of her familiarity with

---

[2] In state court, Dennis also argued the juror failed to disclose her medical condition. Doc. 8-6 at 6, 11. Dennis does not raise that claim in his habeas petition. Doc. 1.

15

the area. *Id.* at 115. On cross-examination, the juror was asked if she identified more with the victim because she was familiar with the area. She responded:

> A. I think so. I think I felt like, it was his home area. And I don't know. In hindsight, 20/20, I feel like I could have been that one person on the jury that said, no, to the whole guilty verdict. And they were all saying, no, to the guilty verdict. And we just came together and concluded that in honestly to say, yes. And it was very—it was—We went back and forth for a really, really long time.
>
> Q. In other words, you deliberated.
>
> A. We deliberated on it.
>
> Q. Okay. And so the jury, back then, it wasn't just a rubber stamp of anything I was saying. There was a discussion about it.
>
> A. We flipped-flopped for a long time, back and forth.
>
> Q. Now—
>
> A. –a lot of people were flip-flopping.

*Id.* at 118–19. The juror testified she told the other jurors during deliberations that she was familiar with Burklawn. But when asked if it interfered with her deliberations, she said, "No. Just hindsight, after the fact of the guilty verdict was in, it sunk in, the seriousness of what we had come together and put forth. And I was starting to have a little bit of doubt about the evidence—not the evidence but just—It just didn't seem like the verdict was solid." *Id.* at 120. The juror also testified, "I'm not doubting the State or anything like that. I just felt like the conglomeration of the evidence, hindsight, 20/20, it just didn't seem like enough to put someone in for murder. I felt very insecure about our verdict. . . . Afterwards." *Id.* at 121–22. The juror further testified she had lived in the Montgomery area for over thirty years, and "it's very, very difficult to even put your finger on a place on a map where I wouldn't have some connection or some knowledge about." *Id.* at 122–23. The circuit court denied the motion for new trial, stating:

> This wasn't an intentional misrepresentation, whether she's familiar or not with the areas. I can't say that it has any material effect on the jury selection or otherwise. I mean, if you're in a small town—one of the smaller counties of the state—I imagine everybody is going to be familiar with the one city in the county.

*Id.* at 127.

On appeal, the Alabama Court of Criminal Appeals held the proper standard under Alabama law was whether the defendant might have been prejudiced by juror misconduct. Doc. 8-6 at 7–10 (quoting *W.G.M. v. State*, 140 So. 3d 491, 494 (Ala. Crim. App. 2013)). It held:

> The record demonstrates that the venire was asked whether anyone knew anything about the crime or the witnesses who lived in that area. No follow-up questions were asked by either the State or defense counsel regarding the location of the crime and how it might influence a potential juror's verdict. Thus, because the venire was never specifically asked about their familiarity with the area where the crime occurred, there is no evidence of, as the circuit judge stated, "an intentional misrepresentation" by Juror E.B. during voir dire. Therefore, we cannot say that the circuit court abused its discretion in denying Dennis's motion for a new trial.

Doc. 8-6 at 10–11. The Court of Criminal Appeals further held the defense was based on self-defense, therefore the location of the crime did not appear to be material. *Id.* at 11.

"[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citations omitted). "Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors." *McDonough Power Equipment Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). "[T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.* at 556.

17

Here, the state court found the juror's incorrect answer was not an intentional misrepresentation. The finding that the juror did not deliberately mislead the court is a reasonable determination of the facts in light of the evidence presented, and Dennis does not rebut the presumption of correctness afforded to that finding by clear and convincing evidence. *See Brumfield*, 135 S. Ct. at 2277, 2282 (discussing § 2254(d)(2) and § 2254(e)(1)). In any event, assuming the juror's unintentionally incorrect answer qualifies as a failure to answer honestly, the correct response would not have provided a valid basis for a challenge for cause. Even Dennis does not assert the juror's answer would support a challenge for cause. Instead, he argues his counsel could have exercised a peremptory challenge to remove the juror. Doc. 1 at 9; Doc. 10 at 7. Dennis's claim therefore fails to satisfy the requirements under *McDonough*., Finally, the juror said she was a long-time resident of the area and would have felt a connection with nearly every location, but she said her familiarity did not interfere with her deliberations. Doc. 8-6 at 10. Consequently, the state court ruling on Dennis's claim regarding the juror's familiarity with the neighborhood was not contrary to or an unreasonable application of federal law as determined by the Supreme Court, and it was not an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2). This habeas claim is therefore due to be dismissed.

Dennis does not ask for an evidentiary hearing, and none is required because "the record refutes the applicant's factual allegations or otherwise precludes habeas relief." *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.").

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Petitioner Karvis Lamar Dennis be DENIED and DISMISSED with prejudice.

It is further

ORDERED that on or before November 9, 2018, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a de novo determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 26th day of October, 2018.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE